IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ANNA MARIE ESSARY,**

      Plaintiff,

vs.                                                           Civ. No. 02-450 JP/DJS

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision filed October 25, 2002. Docket No. 8. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion should be denied.

**PROPOSED FINDINGS**

**I. PROCEDURAL RECORD**

    1    Plaintiff protectively filed her application for disability insurance benefits under Title II of the Act on February 23, 2000, stating an inability to perform any work since December 7, 1999. Tr. 71-72. The Commissioner's Administrative Law Judge (ALJ) conducted a hearing on November

7, 2001. At the hearing, the Plaintiff was represented by her attorney. On December 28, 2001, the ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993. The claimant has not engaged in post-onset substantial gainful activity; the claimant has an impairment considered "severe"; the severity of the claimant's impairments do not meet or equal a listed impairment; the claimant's allegations regarding her limitations are not totally credible; the claimant has the residual functional capacity for the performance of a slightly restricted range of "light" work; the claimant cannot perform her past relevant work; under the Medical-Vocational Guidelines (grids) the claimant is "not disabled;" and the claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Tr. 19-26.   3.   The ALJ entered his decision on December 28, 2001. Thereafter, the Plaintiff filed a request for review. In March of 2002, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 6. The Plaintiff subsequently filed her complaint for court review of the ALJ's decision on April 19, 2002.

## II.  STANDARD OF REVIEW

4.  The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." Andrade v. Secretary of Health and Human Svcs., 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence

supporting the decision.  See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

    5.   In order to qualify for disability insurance benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  Se 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486.  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  See Thompson, 987 F.2d at 1487.

    6.   At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities and his impairment meet or equals one of the presumptively disability impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience.  Id.

### III. DISCUSSION

    7.  Plaintiff raises numerous arguments, some of which were not briefed.  In essence, Plaintiff asserts that the ALJ erred in finding that Plaintiff was not disabled due to her fibromyalgia.

    8.   In evaluating disability claims based on fibromyalgia, the opinion of Judge Posner in Sarchet v. Chater, 78 F.3d 305, 306-07 (1996) is often cited.

> [The claimant] claims...she became totally disabled as a consequence of fibromyalgia, also knows as fibrositis--a common, but elusive and mysterious, disease, much like chronic

fatigue syndrome with which it share a number of features. (citations omitted) Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.  The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and the only symptoms that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body ( and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.  All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to finch.  There is no serious doubt that [the claimant] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests.  Some people may have such a severe case of fibromyalgia as to be totally disabled from working...(citations omitted) but most do not and the question is whether [the claimant] is one of the minority.

9.      A review of the medical evidence shows that Plaintiff has not met her burden.  42 U.S.C. §423(d)(1)(A).  The medical evidence is conclusory and was properly discounted by the ALJ. Specifically, the ALJ noted that "[t]he opinions of these physicians are conclusory at best.  They are unsupported by clinic records supporting their conclusions in the form of objective signs or laboratory findings.  They are also inconsistent with each other." Tr. 23.  Dr. Franklin Ashdown was Plaintiff's treating physician.  His office records are included in the record.  There is only one note of any positive physical findings that Plaintiff had fibromyalgia.  This was a modest swelling in her knees. In his treatment notes there is no clinical data of any functional loss of the Plaintiff.  Moreover, Dr. Ashdown commented in his notes that he would not sign a  a residual functional capacity assessment filled out by her or her attorney.  Tr. 156, 215.  He further wrote that the information requested requires a minimum of a certain number of hours and the expertise of a rheumatologist.  It appears that he changed his mind because an undated form is part of the record.  Tr. 210.  Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)(a physician's opinion may be discounted when it is brief, conclusory or unsupported by the physician's own clinical findings.);  Hamilton v. HHS, 961 F.2d 1495, 1498

(10th Cir. 1992).

10. Plaintiff further relies on the reports of Drs. Bankhurst and Giovanniello. Plaintiff asserts that these physicians are treating physicians and their opinions should be accorded more weight than a consultative or non-examining physicians. Again, the ALJ properly did not accord their opinions great weight. As noted by the ALJ Dr. Giovaniello based his assessment on Plaintiff's subjective statements. Tr. 223-231. His actual records on not included in the record. The Plaintiff saw Dr. Bankhurst on two occasions. Again, his treatment records or offices notes are not included. The ALJ noted that the functional capacity report appears to be merely a recitation of the Plaintiff's complaints. The ALJ properly did not rely on these brief, conclusory subjective reports. Frey, 816 F.2d at 513.

11. Plaintiff underwent a consultative physical examination in May of 2000 by Dr. A. Jakins. Dr. Jakins reported there was no evidence of spasticity, tremor or ataxia. He observed that the Plaintiff was able to standing, walk stoop, squat, sit and bend. Tr. 172. He did not find any significant restriction of functions. Tr. 173. Based upon his physical examination, he found that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally. He further found that as the Plaintiff had no difficulty standing, sitting and walking if she was able to switch positions during the day. He further found that there was no evidence the Plaintiff had difficulty with overhead reaching or fine manipulations. Tr. 173. His findings are consistent with Drs. Green and Stewart, non-examination physicians who reviewed the records. Tr. 183-189.

12. Plaintiff argument that the ALJ should have contacted these physicians is also without merit. When the medical evidence is not sufficient to make a determination, the ALJ may, in certain instances, order a consultative examination. 20 C.F.R. §404.1512(e) and (f). In this matter, the ALJ

5

ordered two consultative evaluations. Tr. 171-81.

<u>The ALJ's determination of Plaintiff's credibility</u>.

13.     Plaintiff asserts that the ALJ improperly discounted her allegations of limitations. Pursuant to <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987) the court must consider: (1) whether the claimant presented objective medical evidence of an impairment that causes pain; (2) if so, whether a loose nexus exists between the impairment and the subjective complaints of pain; and (3) if so, whether the pain is disabling based upon all objective and subjective evidence. <u>Koenig v. Chater</u>, 936 F. Supp. 776, 784 (D. Kan. 1996).

14.     Plaintiff testified that her pain was constant and incapacitating. However, the record shows that she attends church, lies to bake, crochet and garden. Moreover, as noted by the ALJ, two of her children live at home, one with an infant child and both are on disability. Her husband is also on disability. There is evidence in the record that she is the caretaker of her family. Contrary to Plaintiff's assertion, Plaintiff's daily activities is one factor the ALJ should consider in determining the credibility of her statements. <u>Luna</u>, 834 F.2d 165-66.

<u>The ALJ's use of the Grids</u>.

15.     Plaintiff asserts that because she has non-exertional pain, the ALJ erred in using the grids. The ALJ may rely exclusively on the grids when Plaintiff's non-exertional limitations do not significantly erode the occupational base <u>Gossett v. Bowen</u>, 862 F.2d 802, 806 (10th Cir. 1988). The grids take administrative notice that there are 1,400 separate unskilled light occupations. See 20 C.F.R. Part 404, Subpart P, Appendix 2, §202.00(a). Each occupation comprises a significant number of entry level jobs that can be learned after a short demonstration or within 30 days. <u>Id</u>. As discussed above, Plaintiff's pain did not result in functional limitations which would significantly

6

erode the occupation base for light jobs.

### RECOMMENDED DISPOSITION

I recommend finding that the ALJ did apply the correct legal standards and his decision is supported by substantial evidence. The Plaintiff's Motion to Reverse and Remand Administrative Decision, filed October 25, 2002, should be DENIED.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. Sec. 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to Sec.636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**Don J. Svet**
**UNITED STATES MAGISTRATE JUDGE**